[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2011
JOHN LEY
CLERK

No. 10-12032

_____

D.C. Docket No. 8:09-cv-00923-SDM-EAJ

ANTHONY CATRON,
JO ANNE REYNOLDS,
WILLIAM SHUMATE,
on behalf of themselves and all others similarly situated,
RAYMOND YOUNG,

Plaintiffs - Appellants,

CHARLES R. HARGIS, et al.,

Plaintiffs,

versus

CITY OF ST. PETERSBURG,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 28, 2011)

Before EDMONDSON and MARTIN, Circuit Judges, and HODGES,* District Judge.

EDMONDSON, Circuit Judge:

In this Section 1983 case, four homeless plaintiffs challenge the constitutionality of two ordinances in the City Code of St. Petersburg, Florida (the "City") and of the City's enforcement of the ordinances.

One ordinance, Section 20-30 (or, the "trespass ordinance"), authorizes certain city agents to issue a temporary trespass warning for specific city land -- in effect, an exclusion from the property -- on which the agent determined that the warning recipient had "violate[d]" city or state law. The other ordinance, Section 8-321 (or, the "storage ordinance"), prohibits storage of personal property on city land such as parks and rights-of-way. The district court dismissed all of Plaintiffs' claims; we affirm the district court's rulings, except we vacate part of the district court's ruling about the trespass ordinance. Plaintiffs have stated claims on the issues of procedural due process under the United States Constitution and on their right to intrastate travel under the Florida Constitution.

---

*  Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

## I.

This case involves a complaint against the city of St. Petersburg, Florida, by four homeless residents: Anthony Catron, Raymond Young, Jo Anne Reynolds, and William Shumate ("Plaintiffs"). Plaintiffs contend that two city ordinances, Sections 20-30 and 8-321, and the City's manner of enforcement for these ordinances, violate Plaintiffs' rights under the United States and Florida constitutions.

The City has cited, arrested, or confiscated property from each of Plaintiffs for violating the trespass ordinance, the storage ordinance, or both. Plaintiffs filed suit in district court seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. The district court dismissed with prejudice Plaintiffs' amended complaint.

On appeal, Plaintiffs argue that the trespass ordinance -- both on its face and in practice -- violates the Due Process Clause of the Fourteenth Amendment, the First Amendment overbreadth doctrine, and the right to intrastate travel under the Florida Constitution. Plaintiffs argue that the storage ordinance is void for vagueness under the Due Process Clause.

3

## II.

We review <u>de novo</u> a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  <u>Redland Corp., Inc. v. Bank of Am. Corp.</u>, 568 F.3d 1232, 1234 (11th Cir. 2009).

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007)).  Stating a plausible claim for relief requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged": "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>

## III.

Plaintiffs' first three arguments on appeal are about Section 20-30, the trespass ordinance.  Briefly stated, the trespass ordinance authorizes certain city employees, including police officers, to issue a "trespass warning," which warns persons on public property to depart from that property and not to return.

The trespass ordinance gives authority to issue a trespass warning for public property in three instances: (1) "city employees or officials, or their designees, having control over a facility, building, or outdoor area, including municipal parks" may issue a trespass warning to "any individual who violates any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official" for the public property where the violation occurred, (2) a police officer may issue a trespass warning, when the city official in control of the pertinent city property is unavailable, to "any individual who violates any city ordinance or state law" for the public property where the violation occurred but only if "the police officer [has] receive[d] the approval of the officer's immediate supervisor for the issuance of the trespass warning," and (3) any city employee or official has authority "to issue a trespass warning to any person for any lawful reason for any city property . . . , when necessary or appropriate in the sole discretion of the city employee or official." §§ 20-30(a)-(b), (g). On its face, the trespass ordinance does not cover public rights-of-way. Section 20-30(a)-(b). But Plaintiffs allege that the City enforces the ordinance "curb to curb" -- on public sidewalks and bus shelters located on public sidewalks.

After a person has received a trespass warning, if the person is found on the pertinent public property "in violation of a trespass warning [he] may be arrested

5

for trespassing." Section 20-30(e).[1] Section 20-30 requires trespass warnings -- as exclusions -- to be for a limited time. For first-time violations, the trespass-warning period may not exceed one year; for all other violations, the trespass-warning period may not exceed two years. Section 20-30(c).

A person who has been issued a trespass warning (the "warning-recipient") may apply to exercise lawfully that person's First Amendment rights on the city property that is the subject of the trespass warning, and the city official or employee in control of the property "shall not [] unreasonably den[y]" the warning-recipient authorization "to enter the property or premises to exercise his or her First Amendment rights or to conduct municipal business." Section 20-30(f).

A copy of the trespass warning -- it is a writing -- issued pursuant to the trespass ordinance must be provided to the warning-recipient, but no formal

---

[1] Florida's trespass statute for property other than a structure or conveyance provides:
> A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance . . . [a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation. . . commits the offense of trespass on property . . . .

FLA. STAT. ANN. § 810.09.

procedures have been set out by which the recipient of a trespass warning may challenge the basis of the warning or the terms of the warning.  Section 20-30(d).[2]

A.


Plaintiffs first argue that the trespass ordinance is unconstitutional facially, and as applied to Plaintiffs, in violation of the Due Process Clause of the Fourteenth Amendment.[3]

The Due Process Clause requires "that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" <u>Cleveland Bd. of Educ. v. Loudermill</u>, 105 S.Ct. 1487, 1493 (1985) (quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 70 S. Ct. 652, 656 (1950)).  The government must provide the required notice and opportunity for a hearing "at a meaningful time and in a meaningful manner," although the notice and hearing may be postponed until after the deprivation has occurred.  <u>See</u> <u>Mathews v. Eldridge</u>, 96 S. Ct. 893, 902 (1976).

---

[2] The trespass warning form attached to the City Police Department's instructional order on trespassing reads, in part, this way: "You are hereby notified that your presence is no longer welcome . . . on the [municipal] property/premises described below, unless such prohibition is rescinded in writing by the City official having control over the premises."

[3] Plaintiffs, in what they term a "facial" challenge, do not attack only the trespass ordinance but allege also that the City's actual manner of enforcement goes beyond the plain words of the ordinance.

7

A Section 1983 procedural due process claim requires a plaintiff to prove three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).

Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally. City of Chicago v. Morales, 119 S.Ct. 1849, 1858 (1999) (plurality opinion) (citations omitted) ("[A]n individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is 'a part of our heritage,' or the right to move 'to whatsoever place one's own inclination may direct.'") Whether or not this interest is a fundamental right for the purpose of substantive due process, Doe v. City of Lafayette, 377 F.3d 757, 770-73 (7th Cir. 2004), a person may forfeit this liberty right by trespass or other violation of law, Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994). But the initial question we decide is not whether Plaintiffs have forfeited a liberty interest by trespass or other violation of law, but what interest Plaintiffs allege they possessed (and then have been deprived of) in the first place.[4]

---

[4] The City -- arguing that Plaintiffs do not have a right to trespass on public property -- misunderstands the deprivation alleged here. Before receiving a trespass warning, the warning-recipient is, by definition, not trespassing. The deprivation accomplished by the issuance of a

Plaintiffs' factual allegations that the City prohibited them from being in city parks (in general, and in Williams Park specifically), on public sidewalks, and at bus shelters located on public sidewalks lead us to conclude that "there is more than a sheer possibility" that Plaintiffs have been deprived of a constitutionally protected liberty interest. Cf. Iqbal, 129 S. Ct. at 1949. Plaintiffs have sufficiently alleged that the City has deprived them of liberty interests in two ways, by 1) enforcing the trespass ordinance to prohibit them from having access to a specific park (Williams Park) as ordinarily used by the public; and 2) carrying out a policy of enforcing the ordinance to prohibit their use of all parks in the City open to the public generally. These allegations satisfy the first element for a procedural due process claim.[5]

And the parties do not dispute that state action is present. See Monell v. Dep't of Soc. Servs., 98 S. Ct. 2018, 2035 (1978). Therefore, due process is needed, and we must determine whether Section 20-30 provides the

---

trespass warning therefore takes place before any trespass -- or supposed "right to trespass" -- exists.

[5] This right, to use a city park or parks, of course, is not absolute. We decide today only that a resident of St. Petersburg has some federal right to use St. Petersburg parks under the ordinary conditions in which these parks are made available to the general public. St. Petersburg residents do not have a constitutional right to use public parks under all conditions and at all times.

constitutionally adequate process that is due.  See Morissey v. Brewer, 92 S.Ct. 2593, 2600 (1972).

To determine whether the ordinance satisfies the constitutional requirement of procedural due process, we apply the Mathews balancing test:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

96 S. Ct. at 903.

Because Plaintiffs possess a private liberty interest in lawfully visiting city property that is open to the public (an interest of which Plaintiffs will be deprived by the issuance of a trespass warning), the first element of the Mathews test weighs in Plaintiffs' favor.

Turning to the third Mathews element, the City's interest in discouraging unlawful activity and in maintaining a safe and orderly environment on its property is substantial.  See First Vagabonds Church of God v. City of Orlando, 638 F.3d 756, 762 (11th Cir. 2011) (en banc).  In addition, we accept -- even without the aid of a factual record -- that some expense and burden would

10

probably arise as a result of additional procedures to allow challenges to the receipt of a trespass warning. This element weighs in the City's favor.

Last, considering the second Mathews element, we conclude that this element weighs heavily in Plaintiffs' favor. The trespass ordinance causes a substantial risk of erroneous deprivation of liberty because it is seemingly easy for the City -- through a variety of agents -- to issue a trespass warning and because no procedure is provided for the recipient of a trespass warning to challenge the warning or for the warning to be rescinded.

Section 20-30 provides a lot of discretion to many different city agents to issue trespass warnings for a wide range of acts. Given that these warnings operate like some kind of injunction, this situation creates a substantial risk of erroneous deprivation of liberty. Section 20-30 gives many different agents authority to issue a trespass warning: warnings can be issued by police officers, "city employees or officials . . . having control over" a particular city property, plus even the designees of city employees. §§ 20-30 (a)-(b). In addition, a wide range of acts could constitute a violation of "any city ordinance, rule or regulation, or state law or lawful directive of a city employee or official" and might result in a trespass warning: public indecency, littering, and even disobeying the lawful directions (for example, do not run around the pool) of a lifeguard in a public pool

would seemingly all be included in that description.  Furthermore, Section 20-30 provides no guidance to city officials (or their designees) or police officers in exercising their discretion to determine whether a person has actually committed a violation that permits issuance of a trespass warning: this lack of specificity suggests that whenever an authorized city employee thinks a violation has occurred, he may issue a trespass warning.[6]

The ease with which trespass warnings may be issued is particularly problematic here because the trespass ordinance provides no procedural means for a warning-recipient to challenge the warning.  An evident process for such challenges has significant value in avoiding mistakes.  Even if it is impractical for the City to provide a pre-warning hearing to "assure that there are reasonable grounds to support" the trespass warning, the City must provide some post-deprivation procedure to satisfy the requirements of the Due Process Clause. See Gilbert v. Homar, 117 S.Ct. 1807, 1813-14 (1997).

The City argues and the district court concluded that the trespass ordinance affords adequate procedural due process because if a warning-recipient later violates the warning and is ultimately charged with misdemeanor trespass (a

---

[6] And the text of the ordinance seems not to rule out issuance of a trespass warning based on a violation that the pertinent city agent failed to witness personally.

12

violation of state, not city law) the warning-recipient will be able to challenge the validity of the trespass charge in state court.

We are not persuaded that this state forum affords sufficient procedural protections. These trespass warnings are intended to serve instantly as some kind of restraining injunction. The process available in state court, as a matter of criminal procedure, to contest a state trespass charge -- if the trespass warning later is not heeded -- is beside the point. A challenge to a trespass *charge* in state court does not equal a challenge to the validity of a trespass *warning*, especially of the warning's issuance at the outset: these two different legal questions (was a trespass warning rightly due per the city ordinance; was the state trespass law violated) require examination of different acts and different circumstances.

Nothing presented to us shows that a state court must evaluate the underlying circumstances that supposedly led to a trespass warning to hold a person criminally responsible for the act of entry on property that gave rise to the later trespass charge.[7] Besides, even if a Florida court acquitted the warning-

---

[7] The Florida trespass statute contains no requirement that "notice against entering or remaining" be rightful, authorized, or valid. FLA. STAT. ANN. § 810.09; see also id. at § 810.011 (no definition of "notice"). The trespass statute has four separate elements: "1) wilfully entering upon or remaining in any property; 2) other than a structure or a conveyance; 3) without being authorized, licensed or invited; 4) where notice against entering or remaining is given either by actual communication to the offender or by posting, fencing or cultivation." Smith v. State, 778 So. 2d 329, 330 (Fla. 2d Dist. Ct. App. 2000).

13

recipient of the state trespass charge, that the state court's decision, as a matter of law, would vacate a trespass warning issued by the City, a different political entity, is not obvious.[8]

The way the City has allegedly applied Section 20-30 against Plaintiffs in this case illustrates some of the problems posed by the absence of municipal review. In 2006 a police officer issued Catron a trespass warning for "all of Williams Park" and "all [C]ity parks," which would remain in effect "permanently." This warning is an example of a trespass warning not authorized by Section 20-30, which authorizes a warning applying only to the "specific property where the violation occurred" for a limited time. But as the trespass ordinance is currently written, Catron has been provided by the City with no way to contest the trespass warning or at least the scope of the warning. Catron's only

_____

[8] The trespass warning states that the warning-recipient is "hereby notified that [the warning-recipient's] presence is no longer welcome . . . on the property/premises described . . . unless such prohibition is rescinded in writing by the City official having control over the premises." The City and the district court point to the language in the trespass warning form, which implies that a trespass warning can be "rescinded in writing by the City official having control over the premises." The suggestion that a trespass warning -- in some unspecified circumstance -- can be rescinded does not establish (or give notice) that a procedure exists for a warning-recipient to seek the rescission. For example, nothing in the ordinance or in the language of the trespass warning obligates anyone on behalf of the City to listen, even for a moment, to a single word from a warning-recipient who wishes to call into question the correctness of the warning's issuance -- even after the warning has been issued. And the "rescinded in writing" phrase is entirely consistent with the simple idea of mercy or clemency by grace on the part of a city official brought about by the official's own change of mind, with no prompting from or no meaningful opportunity to contribute information from the warning-recipient: this kind of rescission is disconnected from the right of due process.

14

options, it seems, are to relinquish his right to visit city parks altogether or to violate the trespass warning and subject himself to a criminal prosecution for trespass by a different sovereign (the state) or to bring a court action challenging the entire scheme.

We conclude that Plaintiffs have stated a claim, facially and as-applied, under the Due Process Clause: Section 20-30 lacks constitutionally adequate procedural protections as the ordinance is presently written and allegedly enforced.

## B.

Plaintiffs next argue that they, in the light of the First Amendment, have stated a claim for relief that Section 20-30 is facially unconstitutional and substantially overbroad.

"[A] party [may] challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker . . . ." Forsyth Cnty. v. Nationalist Movement, 112 S. Ct. 2395,

15

2401 (1992). We must keep in mind that invalidating a law for overbreadth is "strong medicine." Virginia v. Hicks, 123 S.Ct. 2191, 2199 (2003).

Plaintiffs contend the trespass ordinance is overbroad in the discretion it gives city employees to issue trespass warnings, warnings which ban access to quintessential public fora uniquely dedicated to expressive activities.[9] Plaintiffs allege no facts to support this attack-on-expression argument, but just set out the words of the trespass ordinance instead. This recitation of Section 20-30 does not support an inference that the trespass "notice would even be given to anyone engaged in constitutionally protected speech." Hicks, 123 S.Ct. at 2198.

A risk of erroneous enforcement of Section 20-30 does exist and some risk of suppression of speech in traditional public fora could therefore possibly exist, given the broad discretion city agents possess in enforcing the ordinance. See Forsyth Cnty., 112 S. Ct. at 2401. But the facts alleged do not plausibly suggest an "*impermissible* risk of suppression of ideas" in "*every* application" of the

[9] Plaintiffs also argue the trespass ordinance is overbroad in the discretion it gives city officials to grant or deny permission to warning-recipients who later wish to exercise their First Amendment rights. We suspect that this First Amendment exception may suffer from the same problems of too much discretion and insufficient procedural due process that infect the ordinance in general. But, given our resolution of Plaintiffs' overbreadth claim, we need not rule on the exception specifically. Just as the Supreme Court did in Hicks, "even assuming invalidity of" the First Amendment exception that requires advance permission from a city official with broad discretion, we conclude that Plaintiffs have not alleged facts to support a claim that the "trespass policy as a whole prohibits a 'substantial' amount of protected speech in relation to its many legitimate applications." Hicks, 123 S.Ct. at 2199.

16

ordinance.  See id. (emphasis added).  In this instance, "whatever overbreadth may exist should be cured through" as-applied litigation in "fact situations to which [the ordinance's] sanctions . . . may not [constitutionally] be applied."  Broadrick v. Oklahoma, 93 S.Ct. 2908, 2918 (1973).

Plaintiffs have stated no claim for the extraordinarily rare overbreadth invalidation they seek.

C.

Third, Plaintiffs argue that they have stated a claim for relief for violation of Plaintiffs' right to intrastate travel and freedom of movement under the Florida Constitution: Plaintiffs contend that the City's customs and practices taken pursuant to the trespass ordinance burden their right to intrastate travel.

Plaintiffs' allegations plausibly suggest that the City's practice of enforcing the trespass ordinance limits their protected freedom to travel intrastate.[10]  The Florida Supreme Court recognizes, under its state constitution, a fundamental right

_____

[10] In their amended complaint, Plaintiffs alleged that the City's enforcement of a variety of policies and ordinances burdens Plaintiffs' right to intrastate travel under the Florida Constitution.  On appeal, Plaintiffs limit their argument about their alleged right to intrastate travel to a challenge of the City's manner of enforcement of the trespass ordinance.

17

to intrastate travel.  State v. J.P., 907 So. 2d 1101, 1113 (Fla. 2004); see FLA. CONST. art. I, § 2.

Of decisive importance, Plaintiffs allege that the City "enforc[es] the trespass laws to prohibit Plaintiffs . . . from being present on public sidewalks surrounding public parks [and] waiting for buses at bus shelters located on public sidewalks surrounding public parks . . . ."[11]  All Florida citizens have a right under the Florida Constitution to "chat[] on a public street," "stroll[] aimlessly," and "saunter down a sidewalk."  J.P., 907 So. 2d at 1113 (quoting Wyche v. State, 619 So. 2d 231, 235 (Fla. 1993)).  If the City has a policy of enforcing the trespass ordinance on sidewalks surrounding public parks as Plaintiffs allege, the alleged City policy limits Plaintiffs' right of intrastate travel as defined by the Florida Supreme Court.  The City constitutionally may burden this right.  But the City must meet a condition first: the City's policy must be narrowly tailored to advance a compelling governmental interest.  See J.P., 907 So. 2d at 1115-16.

[11] The City argues that the Florida Supreme Court has not recognized a right to intrastate travel to a particular place and that the trespass ordinance only denies warning-recipients access to the particular place where the violation occurred.  But Plaintiffs do not allege or argue that citizens of Florida enjoy a fundamental right to intrastate travel to a particular place on which they have trespassed.  Plaintiffs allege that the City has a policy of enforcing -- by barring access to adjoining sidewalks and bus shelters -- the trespass ordinance *beyond* the boundaries of the public parks where violations have occurred.

18

Even on appeal, the City asserts no interest in this alleged enforcement of the trespass ordinance on sidewalks nor does the City argue that the alleged enforcement policies are narrowly tailored to meet the City's goals. We cannot conclude, based on the allegations and arguments before us, that the City's alleged policy of enforcing the trespass ordinance on public sidewalks passes the strict scrutiny test required by Florida law.

## IV.

Plaintiffs challenge Section 8-321, the storage ordinance, under the Due Process Clause as impermissibly vague on its face.

Section 8-321 prohibits the "unlawful" outdoor storage of, among other items, "personal property including clothing or bedding," on private property and on public property, including public rights-of-way. §§ 8-321(b)(5), (h)(4). Plaintiffs challenge the parts of Section 8-321 about storage on public property. Under the ordinance, storage is "broadly interpreted to include any action to place, store, park, display, locate, or set" an item of personal property. Section 8-321(h)(1).

19

If, pursuant to the storage ordinance, a city official provides a person with written notice that the person is unlawfully storing personal items on public property, the person must remove his personal items from public property within thirty-six hours. Section 8-321(d)(1). The City may remove unlawfully stored items that remain (or have been moved to another public location) on public property after thirty-six hours have passed. §§ 8-321(d)(1), (3). Moreover, if a sign is posted on public property "stating that unattended items may be removed immediately, then no additional notice shall be required and the item may be removed immediately." Section 8-321(d)(4).

Plaintiffs argue that the storage ordinance is vague and unconstitutional on its face because it fails to define sufficiently the term "unlawful storage" or fails to define sufficiently the term "unattended" or both. Plaintiffs allege that the ordinance is unconstitutionally vague because it does not "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . .'" and it provides no "sufficiently explicit standards for those who will apply it, thereby encouraging 'arbitrary and discriminatory enforcement.'" United States v. Single Family Residence, 803 F.2d 625, 630 (11th Cir. 1986) (quoting Grayned v. City of Rockford, 92 S. Ct. 2294, 2299 (1972)).

In bringing a facial challenge to an ordinance for vagueness, a party "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Holder v. Humanitarian Law Project, 130 S.Ct. 2705, 2719 (2010) (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 102 S. Ct. 1186, 1191 (1982)). Accordingly, even though this challenge is a facial challenge, we must determine whether the terms "unlawful storage" and "unattended" are vague as applied to Plaintiffs' circumstances. If Plaintiffs' own conduct is clearly proscribed by the terms of the ordinance, this "necessarily precludes a finding of facial vagueness." High Ol' Times, Inc. v. Busbee, 673 F.2d 1225, 1228 (11th Cir. 1982).

For Plaintiffs' "unlawful storage" argument, the term "unlawful storage" clearly proscribes plaintiff Reynolds' alleged conduct and is not vague. Reynolds placed several bags, blankets, and other personal belongings -- more than she could carry -- on a park bench beside her. Reynolds kept these items with her because "she did not have access to shelter or a place to store her belongings." A police officer gave Reynolds written notice that her belongings were "unlawfully stored on public property."

Plaintiffs' allegations indicate that Reynolds accumulated personal items and kept them with her on public property to preserve them for future use: this

conduct accords with the ordinary meaning of the word "store." Reynolds' conduct was clearly proscribed by the storage ordinance: thus, the ordinance could be constitutionally applied to her. In addition, because even "the possibility of constitutional application to some of the conduct in which the [plaintiffs] are engaged necessarily precludes a finding of facial vagueness," and a constitutional application is possible given the allegations in Reynolds' case, we need not examine what is alleged about plaintiff Young's conduct; we can conclude that Section 8-321, on its face, is not unconstitutionally vague in its definition of "unlawful storage."[12] See Busbee, 673 F.2d 1225, 1228.

For "unattended," Plaintiff Shumate says this term is too vague and that his own conduct was not clearly proscribed by the storage ordinance. The City, on three occasions, removed Shumate's personal property, which he had left temporarily in the care of other people, from a city park; according to Shumate the removals took place because the City considered his property to be "unattended"

---

[12] Plaintiffs' argument that variations in the exact amount of personal possessions officers have said Plaintiffs are allowed to keep on public property raise only marginal problems in the application of the ordinance that do not suggest the ordinance is vague in its definition of the normal, "general class of offenses" to which the ordinance is directed. United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 93 S.Ct. 2880, 2897 (1973). "As always, enforcement requires the exercise of some degree of police judgment," Grayned, 92 S.Ct. at 2302, and the degree of judgment involved for a police officer to determine what constitutes storage is acceptable.

22

for the purpose of enforcing the storage ordinance. The common and ordinary meaning of "unattended" indicates that an item is not "unattended" if some person -- the owner or his proxy -- is present with the item and looking after it. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2482 (1993) ("lacking a guard, escort, caretaker, or other watcher"). We agree that Shumate's alleged conduct was not clearly proscribed by the storage ordinance.

Because Shumate's conduct was not clearly proscribed by the challenged terms of the ordinance, we must decide whether "what the ordinance as a whole prohibits . . . in the vast majority of its intended applications" is clear enough. Hill v. Colorado, 120 S.Ct. 2480, 2498 (2000) (quotations and citations omitted). Given health, safety, and security concerns, the City's removal (even immediate removal when a warning sign is posted) of unattended items on public property would not surprise a person of ordinary intelligence who left personal belongings unattended -- that is, not closely and plainly accompanied by someone associated with the owner -- on public property. And although Shumate's specific conduct was not clearly proscribed by the storage ordinance, in the vast majority of the *intended* applications of the ordinance, the ordinary meaning of "unattended" is not so broad as to encourage arbitrary or discriminatory enforcement. Cf. Busbee,

673 F.2d at 1229 (if a law is susceptible of an interpretation which cures the law's vagueness, the court must accord the law such meaning).

We cannot conclude that the ordinance is facially void for vagueness because we cannot conclude that it is "impermissibly vague in all its applications." Hoffman Estates, 102 S.Ct. at 1191.

V.

We AFFIRM the district court's ruling, except we VACATE the district court's dismissing the claim that Section 20-30 violates procedural due process and dismissing the claim that Section 20-30 violates the right to intrastate travel under the Florida Constitution.

AFFIRMED in part, VACATED in part, and REMANDED.

24

HODGES, District Judge, Concurring in part and Dissenting in part:

I concur in those parts of the majority opinion that affirm the rulings of the district court, but respectfully dissent from the majority holding (Part III.A.) that the Appellants have adequately pleaded a deprivation of procedural due process as to Section 20-30, the trespass ordinance, and I would not reach the state constitutional claim regarding the right to intrastate travel (Part III.C.).

In sum, I would affirm the district court's dismissal of the action, but with instruction to dismiss the state constitutional claim without prejudice, thereby leaving that issue for the state courts to resolve.

**I.**

As the majority skillfully points out, the liberty interest asserted by the Appellants is bifurcated and progressive in nature and significance. At the time a trespass warning is issued, no trespass has yet occurred and the limitation upon the claimant's liberty of movement is minimal. If the warning is later unheeded resulting in an arrest, the deprivation of the claimant's liberty is obviously much more severe. This is important because the process that is due depends upon the extent or significance of the deprivation involved. See Gilbert v. Homar, 520 U.S. 924, 931, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997); Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); Morrissey v. Brewer,

25

408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

Here, as noted in the majority opinion, the trespass warning issued to Appellant Anthony Catron expressly stated that it was effective "unless such prohibition is rescinded in writing by the City official having control over the premises." The majority dismisses this declaration as insufficient to establish a necessary procedure, and this is the point of my disagreement. The mere mention of rescission necessarily implies – and gives notice of – the right to apply to the designated city official for review and possible relief. To be sure, that is not an elaborate procedural mechanism, but I deem it to be enough under the circumstances to provide the required procedural safeguard for the minimal deprivation occasioned by a trespass warning. Thompson v. Ashe, 250 F.3d 399 (6th Cir. 2001) is a case remarkably on point. Albert Thompson was placed on a "no trespass" list by a public housing authority prohibiting entry by Thompson upon the grounds of public housing facilities managed by the authority. Among other claims, Thompson asserted a violation of his right to procedural due process. The Sixth Circuit held (250 F.3d at 407-408) that a meeting between Thompson and the executive director of the authority concerning Thompson's placement on the list was sufficient to satisfy any process he was due.

**II.**

If the dismissal of the federal claims is affirmed in all respects, as I believe to be appropriate, it then becomes unnecessary to decide what to do about the state constitutional claim. The district court dismissed it with prejudice while the majority (Part III.C.) holds that the claim should be reinstated. In the absence of the federal claims, however, the statute – 28 U.S.C. § 1367(c)(3) – provides a mechanism for declining jurisdiction in order that the state courts may resolve issues of state law, especially issues of state constitutional law. The circumstances of this case clearly fall within the ambit of the relevant authorities teaching that dismissal without prejudice is the appropriate course of action here. See Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742-747 (11th Cir. 2006). See also United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Mergens v. Dreyfoos, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of state claims.").