[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11718

Non-Argument Calendar

————————————————

In re: ERIC WATKINS,

                                                                    Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-mc-63180-WPD

————————————————

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Eric Watkins, proceeding *pro se*, filed a motion seeking leave to file a 42 U.S.C. § 1983 complaint alleging constitutional claims stemming from his suspension from a public library located on a college campus.

Watkins is a serial litigant who is subject to a filing injunction that prevents him from filing any new lawsuit in the Southern District of Florida without prior court approval. In a prior case, we upheld this filing injunction on appeal "so long as the court merely screen[s] out the frivolous and malicious claims and allow[s] the arguable claims to go forward." *Watkins v. Dubreuil*, 820 F. App'x 940, 948 (11th Cir. 2020) (unpublished) (alterations adopted, quotation marks omitted). The district court screened Watkins's proposed complaint and determined he did not present an arguable case and concluded this was a frivolous lawsuit. Watkins now appeals. After careful review, we agree with the district court that Watkins's claims are frivolous. Accordingly, we affirm the dismissal of Watkins's proposed claims.

## I.

In his proposed § 1983 complaint, Watkins sought to bring a civil suit against library supervisor Victoria Weidman, an unknown Broward Community College security guard, and an unknown Broward County Sheriff's Office ("BSO") deputy for suspending him from the North Regional/Broward College Library, claiming that they violated his First Amendment rights, Fourth Amendment rights, and Due Process rights.

The proposed complaint alleged that, on April 23, 2019, Watkins was suspended from the library for thirty days following an altercation with a library patron and the library supervisor. Watkins attempted to use the restroom at the library and encountered a male, who he claimed "verbally assaulted" him. The altercation between the two men resulted in the summoning of police and the college security guard. Immediately following the incident, the defendants collectively engaged in what Watkins alleges was a "limited and biased" investigation. At the conclusion of the investigation, Weidman and the security guard determined that Watkins would be suspended from the library for thirty days.

During a discussion in the library lobby with Watkins, Weidman referred to Watkins as "sir" and Watkins vehemently objected, stating, "my name is not sir, sir is a Faggot and a madicone" [sic].[1]  Watkins alleged that Weidman was "quite familiar" with

---

[1] Watkins most likely meant to use the word "maricon" in his proposed complaint. The word "maricon" is an extremely offensive Spanish slang term that

him (due to a prior lawsuit he filed against her) and she knew he did not like being called "sir." Following the exchange, the BSO deputy attempted to admonish Watkins, who explained why he did not like being called "sir." After Watkins left the library building and was sitting outside, the BSO officer and security guard followed Watkins and engaged him. The security guard told Watkins that he was going to "trespass warn" him from returning to the library and warned, if Watkins ever returned, he would be arrested for trespassing. Watkins claims he was detained in order to be photographed for the trespass warning. He then left the premises.

Although Watkins did not receive any written notice of his suspension from the library on the day of the incident, he received written notice of his suspension on June 6, 2019, from an individual in the Director of the Broward County Library division. He was given ten days to file an appeal. On June 12, 2019, Watkins filed his notice of appeal, and on June 25, 2019, the library division responded, stating that the thirty-day suspension was moot because it had run its course.

On appeal, Watkins argues that the district court erred in denying his motion for leave to file the proposed complaint because the complaint had "arguable merit." Watkins avers that the defendants violated his First, Fourth, and Fourteenth Amendment Due Process Clause rights by (1) suspending him from the library, in violation of his freedom of speech; (2) unlawfully detaining him

---

refers to an individual who is homosexual. *See* https://www.spanishdict.com/translate/maric%C3%B3n (last visited March 7, 2024).

while he was leaving the library, so they could take a trespass photo without reasonable suspicion or probable cause, in violation of the Fourth Amendment; and (3) suspending him from the library and accusing him of trespass without written notice, in violation of the Fourteenth Amendment.

## II.

We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), using the same standards that govern Rule 12(b)(6), Fed. R. Civ. P., dismissals. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). But a determination of frivolity "is best left to the district court," *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). So we review a dismissal as frivolous pursuant to § 1915(e)(2)(B)(i) for an abuse of discretion only. *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008). Under this deferential standard, we will affirm unless the district court made a clear error of judgment or applied an incorrect legal standard. *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1232 (11th Cir. 2004).

A complaint may be frivolous if it lacks arguable factual or legal merit, or if the realistic chance of ultimate success is slight. *Bilal*, 251 F.3d at 1349. Frivolity review is intended "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). In determining frivolousness, the district court may also

consider "a litigant's history of bringing unmeritorious litigation." *Bilal*, 251 F.3d at 1350.

When conducting a frivolity screening pursuant to § 1915(e)(2)(B)(i), the district court has no requirement to assume the truth of the allegations, unlike on a Rule 12(b)(6) motion. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991) (discussing the same statute previously codified at § 1915(d)). So a claim capable of surviving a motion to dismiss "may nonetheless be dismissed as frivolous because the factual contentions are so far-fetched or baseless." *Id.* But even if a complaint legally states a claim and the facts are not fantastic, dismissal on the grounds of frivolity can be justified in narrow circumstances, such as a "questionable claim" by a litigant with a "long history of bringing unmeritorious litigation." *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 641 (11th Cir. 1990).

Here, the district court did not abuse its discretion when it concluded that Watkins's April 2023, proposed complaint lacked arguable merit. Citing numerous previous unsuccessful lawsuits, the district court, which was most familiar with Watkins's litigation history, determined that Watkins "has a pattern of cursing and displaying disruptive behavior in public places, like singing anti-gay songs, complaining about the term 'Sir' and using the word 'Faggot[,]'" and then suing the individuals who confront him. The district court concluded that the allegations in Watkins's current pleading were "entirely consistent" with his pattern of "goading individuals into responding to this inappropriate behavior so that he

can later sue them, usually years later, just as the statute of limitations is about to run." And here, he did so on "nearly the last day before the statute [of limitations ran]." Under these circumstances, the district court determined that the proposed complaint was yet another malicious lawsuit.

Given Watkins's history and the facts alleged in the proposed complaint, we find that the district court did not abuse its discretion when it concluded Watkins's claims were frivolous and warranted dismissal.

## III.

Besides this, Watkins presented "questionable" claims. *See Clark*, 915 F.2d at 61. Watkins seeks to sue the library supervisor, a police officer, and a security officer individually for damages under § 1983.[2] So to prevail he must show that the defendants violated his constitutional rights. *See Waldron v. Spicher*, 954 F.3d 1297, 1303 (11th Cir. 2020). He cannot do that.

A.      First Amendment Retaliation Claim

The First Amendment provides that Congress shall make no law abridging the freedom of speech. U.S. Const. amend. I. Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)

---

[2] Section 1983 of Title 42 of the U.S. Code makes any person acting under color of state law liable for depriving another person of a federal right. 42 U.S.C. § 1983.

(alteration in original) (citation and internal quotation marks omitted). To state a claim for retaliation under the First Amendment, a plaintiff must prove that (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). A person suffers an adverse action if "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).

In a previous case Watkins filed, we recognized that the First Amendment protects the right to receive information, including the "'right to some level of access to a public library.'" *In re Watkins*, No. 23-10359, 2023 WL 5664171, at *2 (11th Cir. Sept. 1, 2023) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992)). But that right to access is not boundless, nor does it allow patrons of the library to engage in "'conduct that would disrupt the quiet and peaceful library environment.'" *Id.* (quoting *Kreimer*, 958 F.2d at 1256).

According to Watkins's proposed complaint, he was suspended from the library for thirty days, asked to leave, and "trespassed" after he used anti-gay slurs in response to Weidman's referring to him as "sir." As the library supervisor, Weidman could reasonably view offensive and homophobic language as disruptive to the "quiet and peaceful library environment." *Kreimer*, 958 F.2d at

1256.  And the BSO officer and security guard reasonably could have reached the same conclusion.  Given Watkins's disruptive and offensive behavior, the officials did not act unreasonably in suspending Watkins from the library.  So they did not violate Watkins's First Amendment rights.  *DeMartini*, 942 F.3d at 1289.

In short, Watkins has no viable First Amendment claim.

B.      Fourth Amendment Unreasonable Seizure Claim

The Fourth Amendment guarantees the right of persons to be free from unreasonable seizures.  U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 8 (1968).  To be reasonable, a custodial seizure must be supported by probable cause.  *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (per curiam).  The Fourth Amendment contemplates three categories of police-citizen encounters: (1) a consensual police-citizen interaction involving no coercion or detention; (2) a brief seizure or investigatory detention; and (3) an arrest.  *Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006).  A Fourth Amendment seizure occurs when an officer, through "physical force or show of authority, terminates or restrains [a person's] freedom of movement, through means intentionally applied."  *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted).

The Fourth Amendment does not prohibit an officer from making an investigatory stop, commonly known as a *Terry* stop, even without probable cause to make an arrest, if (1) the officer has a reasonable suspicion that the person has committed or is about

to commit a crime, and (2) the stop was reasonably related in scope to the circumstances that justified the interference in the first place. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). Accounting for all the particular circumstances, though, no seizure occurs under the Fourth Amendment if a reasonable person would have believed that he was free to leave. *Id.* Under Florida law, "a stop merely to issue a trespass warning is not a *Terry* stop, but rather a consensual encounter." *Rodriguez v. State*, 29 So. 3d 310, 311 (Fla. Dist. Ct. App. 2009) (footnote omitted). Consensual encounters do not implicate the Fourth Amendment. *Jordan*, 635 F.3d at 1186.

Watkins's brief encounter with law enforcement did not violate his right to be free of unreasonable searches and seizures. Although Watkins contends he was "detained" by the BSO deputy, the complaint lacks any allegations that Watkins was physically restrained or that he was advised that he was not free to leave. *See Chandler*, 695 F.3d at 1199. And while the deputy would have been required to show reasonable suspicion that Watkins had committed or was about to commit a crime to conduct a more intrusive detention, Watkins was not subjected to a seizure within the meaning of the Fourth Amendment.

Here, the stop was made "merely to issue a trespass warning[,]" inform Watkins of his suspension from the library premises, and enable the officer to take a photograph to enforce the trespass warning. Under these facts, the stop was a consensual encounter under Florida law. *See Rodriguez*, 29 So. 3d at 311. Importantly, nowhere in the proposed complaint does Watkins state that the

BSO deputy directed him to remain anywhere, told him that he did not have any choice in the matter, or that he could not leave until a written trespass warning was issued. *Cf. Moore v. State*, 200 So. 2d 1290, 1292 (Fla. Dist. Ct. App. 2016). Under the circumstances alleged, no violation of Watkins's Fourth Amendment rights occurred since the issuance of a trespass warning does not require probable cause or reasonable suspicion. *Miller*, 458 F.3d at 1257; *Jordan*, 635 F.3d at 1186.

C.    Fourteenth Amendment Due Process Claim

The Fourteenth Amendment provides that no state may deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend. XIV. The Due Process Clause requires that an individual be given appropriate notice and an opportunity to be heard before such a deprivation. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). That said, the notice and hearing "may be postponed until after the deprivation has occurred." *Id.*

For a procedural-due-process claim under § 1983, a plaintiff must prove (1) a deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. *Id.* We have recognized a "constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally." *Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41 (1999)). An individual may forfeit his liberty interest by committing trespass or other violations of the

law.  *Id.* (citing *City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994)).

In Counts I and II of the proposed complaint, Watkins takes issue with Weidman's refusal to provide him with a copy of the thirty-day suspension and the security guard's failure to give a written notice of trespass.

With respect to his thirty-day suspension from the library, Watkins cannot show that the process afforded to him was constitutionally inadequate.  Weidman initially gave Watkins a verbal notification of his suspension from the library on April 23, 2019—the date of the incident.  And although Watkins did not receive written notice at that time, his proposed complaint concedes that he received written notice of his suspension from the library on June 6, 2019.  He has not alleged any facts that indicate the written notice was substantively inadequate or that any delay in receiving written notice prejudiced him in exercising his right to appeal the suspension.  Under these circumstances, no procedural-due-process violation occurred.  *See Catron*, 658 F.3d at 1266.

Likewise, no constitutional violation occurred with respect to the alleged failure to provide a trespass notice.  Under Florida law, "[a] person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance[ ] [a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation" commits a trespass on property other than a structure or conveyance. Fla. Stat. §

810.09(1)(a)(1). Nothing in the statute requires the trespass notice to be written. And here, Watkins *was* given a verbal warning by the security guard regarding trespass. Watkins also was not arrested for trespass.

Not only that, but any trespass notice is arguably encompassed in the suspension notice that Watkins *did* receive. This is particularly true since Watkins alleged that the security guard, not the BSO officer, provided the trespass notice. Regardless, Watkins takes issue with only the fact that he did not receive a copy of a written trespass warning. But that is not required. He also does not allege the lack of formal procedure—set out in an ordinance or otherwise—by which a recipient of a trespass warning may challenge the basis of the warning or the terms of the warning violates his rights. *Cf. Catron*, 658 F.3d at 1265-66. Finally, because Watkins admitted to using homophobic slurs in the library, he arguably violated the law by disturbing the peaceful environment of the library. Consequently, Watkins may have forfeited his liberty interest and no procedural-due-process violation took place. *See id.* at 1266.

## IV.

The district court did not abuse its discretion in concluding Watkins's proposed complaint lacked merit and his claims were frivolous. This is especially so, given Watkins's extensive history of meritless litigation involving nearly identical allegations in prior suits.

14                          Opinion of the Court                          23-11718

For these reasons, we affirm the district court's denial of Watkins's motion for leave to file a complaint.

**AFFIRMED.**