[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-10034

Non-Argument Calendar

————————————————

In re: ERIC WATKINS,

                                                                        Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-mc-63180-RNS

————————————————

Before JORDAN, ROSENBAUM, and LAGOA, Circuit Judges.

PER CURIAM:

This is yet another lawsuit in which Eric Watkins, a vexatious litigant subject to a filing injunction, alleges constitutional claims stemming from his suspension from a public library under

42 U.S.C. § 1983.  He claims that his free-speech and due-process rights were violated on September 11, 2019, when he was verbally ordered to leave a Broward County library by a library supervisor after arguing with the supervisor and using homophobic slurs[1], and then again on September 16, 2019, when the same supervisor denied him entry to the library for singing an "antigay song,"[2] had him removed from the premises, and refused to provide a written notice of suspension.  As required by the terms of the filing injunction, Watkins sought the district court's leave to file these claims by submitting two proposed complaints.  *See Watkins v. Dubreuil*, 820 F. App'x 940, 948–49 (11th Cir. 2020) (affirming the filing injunction).  The district court denied leave to file on grounds of frivolity.

Ordinarily, we review *de novo* the legal sufficiency of a claim, accepting the factual allegations in the complaint as true.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  But "[a] determination of frivolity is best left to the district court, and we will review such determinations only for abuse of discretion."  *Bilal v. Driver*,

---

[1] Watkins objected to the library supervisor addressing him as "sir," responding that "sir is a faggot and a madicone," after which the supervisor ordered him to leave the library for the day and threatened to call the police.  As we have previously noted, Watkins most likely meant to use the word "maricon" in his proposed complaint.  The word "maricon" is an extremely offensive Spanish slang term that refers to an individual who is gay.  *See In re Watkins*, no. 23-11718, 2024 WL 1174182, *1 n.1 (11th Cir. Mar. 19, 2024).

[2] Watkins claims he was singing the song "Boom Bye Bye," by reggae artist Buju Banton, which includes the offensive terms "faggot" and "batty boy," as well as references to shooting gay individuals and setting them on fire.  *Watkins v. Bigwood*, 797 F. App'x 438, 440 n.1 (11th Cir. 2019).

251 F.3d 1346, 1349 (11th Cir. 2001).  Frivolity review is intended "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  In reviewing for frivolity, the court may consider facts outside the complaint, including "a litigant's history of bringing unmeritorious litigation."  *Bilal*, 251 F.3d at 1350; *see also Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640–41 (11th Cir. 1990).  Because the court screened for frivolity and considered facts outside the complaint, we review for an abuse of discretion.

"A claim is frivolous if it is without arguable merit either in law or fact."  *Bilal*, 251 F.3d at 1349.  And even if a complaint legally states a claim, a dismissal on grounds of frivolousness might be justified in certain narrow circumstances, such as a "questionable claim" by a litigant with a "long history of bringing unmeritorious litigation" or where "an affirmative defense would defeat the action," such as immunity.  *Clark*, 915 F.2d at 640–41 & n.2.  But any finding of frivolity must have support in the record.  *See id.* (vacating and remanding where "the record in this case establishes no explanation for concluding that [the] case is frivolous").  The court may not simply "adopt[] a presumption of frivolity."  *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 519 (11th Cir. 1991).

Here, we cannot say that the district court abused its discretion in dismissing Watkins's proposed complaints as frivolous.  The court reasoned that the proposed claims were "just like previous, frivolous suits instituted by Watkins after he has been disruptive in

a public space and filed a complaint after he is asked to leave," citing five prior cases as examples. Given his "pattern of goading individuals to respond to his inappropriate behavior and the likely admission of Rule 404(b) evidence at trial," the court stated, there was "no likelihood that he could ever prevail on claims of non-physical injury damages before a jury." The district court was in the best position to make that assessment.

Plus, as to the events on September 11, 2019, we have twice affirmed the district court's denial of leave to file virtually identical free-speech claims as lacking in merit. *See In re Watkins*, No. 23-11718, 2024 WL 1174182 (11th Cir. Mar. 19, 2024) (rejecting proposed free speech claims arising from a library suspension for using the same disruptive and offensive language); *In re Watkins*, No. 23-10359, 2023 WL 5664171 (11th Cir. Sep. 1, 2023) (rejecting proposed free speech arising from a library suspension for using the same disruptive and offensive language). We see no grounds to reach a different result here.

As to the events on September 16, 2019, we have likewise rejected First Amendment retaliation claims stemming from similar behavior. *See Watkins v. Central Broward Reg'l Park*, 799 F. App'x 659, 666–67 (11th Cir. 2020) (affirming the grant of summary judgment on free speech claims arising from being removed and banned from a public park for singing what appears to have been the same antigay song); *Watkins v. U.S. Postal Emp.*, 611 F. App'x 549, 552–53 (11th Cir. 2015) (affirming the dismissal of free speech claims arising from being refused service and ordered to leave a

post office for singing the same antigay song). Watkins points out that he was outside the library at the time he sang the song, but it appears he was still on library premises.

Notably, Watkins makes no claim that his behavior on either September 11 or September 16 did not violate library policy, nor does he challenge library policy as inconsistent with the First Amendment. *See, e.g., Library Code of Conduct*, BROWARD.ORG, https://www.broward.org/Library/Pages/CodeOfConduct.aspx (last visited Aug. 28, 2024) (prohibiting, among other things, "[a]busive, boisterous, disruptive, or loud language or behavior").[3] Instead, he apparently seeks to hold the library supervisor personally responsible under § 1983 for enforcing library policy. But that, standing alone, would be insufficient to impose personal liability, because there is no indication the supervisor had fair notice that library policy unconstitutionally abridged protected speech, or that the suspensions otherwise violated Watkins's clearly established rights. *See Clark*, 915 F.2d at 640 (stating that, in reviewing for frivolity, we may *sua sponte* consider an immunity defense that is "apparent from the face of the complaint"); *Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) ("At the time of Cooper's arrest, the

---

[3] We have recognized a right to use public property "under the ordinary conditions in which [the property is] made available to the general public." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 n.5 (11th Cir. 2011). But "[t]he guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *U.S. Postal Serv. v. Council of Greenburgh Civic Assocs.*, 453 U.S. 114, 133 (1981) (quotation marks omitted).

statute had not been declared unconstitutional, and therefore it could not have been apparent to Dillon that he was violating Cooper's constitutional rights.").

Finally, Watkins seeks to bring due-process claims based on the supervisor's failure to provide contemporaneous written notice of Watkins's suspensions. But as we recognized in a previous case Watkins filed, notice and an opportunity to be heard "may be postponed until after the deprivation has occurred." *See In re Watkins*, 2024 WL 1174182, ⋆ 4 (quoting *Catron*, 658 F.3d at 1266). And we rejected a similar due-process claim where Watkins received written notice of his suspension more than one month after his suspension. *See id.* at ⋆4–5. Here, Watkins includes no factual allegations about whether he received written notice of his suspensions at a later time, or about his ability to challenge the suspensions more generally, so he has not raised viable due-process claims.

Given the facts alleged in the proposed complaints, our prior rejection of claims involving similar allegations, and Watkins's history of bringing unmeritorious litigation, the district court did not abuse its discretion in concluding that Watkins's claims were frivolous and therefore barred by the filing injunction.

**AFFIRMED.**