# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50974

United States Court of Appeals
Fifth Circuit

**FILED**

June 28, 2016

Lyle W. Cayce
Clerk

THOMAS J. BLANKENSHIP,

 Plaintiff–Appellant,

v.

CHARLES BUENGER; BARRY HAND; STEVE MAUK; CLAY MCKINNEY; BEN SAAGE; DAVID HENDRICK; BOBBY BAIN; DANNY VOLCIK; EDDIE COKER; LESLIE CASEY; J. "ANDY" HAWKINS; CHALK BLUFF WATER SUPPLY CORPORATION; SHERIFF PARNELL MCNAMARA,

 Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:14-CV-474

Before WIENER, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Thomas Blankenship appeals the district court's dismissal of his 42 U.S.C. § 1983 action pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).  We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50974

## I

This case arises from an ongoing dispute between Blankenship and representatives for the Chalk Bluff Water Supply Corporation (CBWSC), a private, nonprofit water supply corporation operating in McLennan County, Texas. Blankenship, an attorney proceeding pro se, alleged the following facts in his complaint.

Blankenship, a member of CBWSC, applied in November 2013 to run for a position on CBWSC's Board of Directors. The parties' dispute began in early December 2013, when Blankenship went to the CBWSC office and presented an open records request to Barry Hand, the manager of CBWSC, seeking copies of all submitted applications to verify that "he and the other applicants were on record as having filed their applications before the deadline" to apply.

After consulting with Charles Buenger, an attorney for CBWSC, Hand told Blankenship that the applications "would not be provided to him until certain information was redacted from the applications." Blankenship was dissatisfied with this response and a "heated argument" ensued; Blankenship felt that the documents constituted "public information" that CBWSC "could not withhold." In protest, Blankenship took a seat in the CBWSC foyer and refused to leave "until Hand gave him the [requested] copies." Hand in turn threatened to "call the sheriff and have a trespass warning ticket issued to [Blankenship]." Blankenship "left under protest."

Later that day, Blankenship arranged for an acquaintance, Jacob Brown, to submit an open records request to CBWSC; Blankenship promised pro bono legal representation to Brown in the event CBWSC threatened legal action. After CBWSC again refused to provide the documents, Blankenship entered the office and demanded the records on Brown's behalf, as his attorney. Hand told Brown and Blankenship that if they did not leave, he would have them arrested for trespassing. Later that evening, deputies for the McLennan

2

No. 15-50974

County Sheriff's Department issued a trespass warning ticket to Blankenship. Deputies told Blankenship that the trespass warning "would last until CBWSC withdrew it."

On December 30, 2013, when the election ballots were issued, Blankenship noticed that his "qualifications" and "100-word" statement of purpose submitted alongside his application were not included on the ballot, though such contents were provided for incumbent candidates. He claims that the omission was deliberate and that CBWSC then took actions to block Blankenship's subsequent attempt to contact voters and provide his qualifications. Though Blankenship's complaint is not clear on this point, we surmise that he was not elected to the Board.

In late January 2014, Blankenship attended a CBWSC Board meeting held off-site and was told by a Board member that he could never again "come on the premises of CBWSC . . . even to address the Board with regard to the trespass warning." In light of this pronouncement, Blankenship was apprehensive about attending the February Board meeting, scheduled to be held at the CBWSC office. Nevertheless, steadfast in his "right to attend th[e] meeting . . . [as] a member/owner of CBWSC," Blankenship attended the meeting wearing a sign which read, "I AM A MEMBER-OWNER OF CBWSC AND I HAVE A RIGHT TO BE HERE."

After CBWSC contacted the Sheriff's Department, deputies arrived on the scene and instructed Blankenship that "he would be arrested if he did[] [not] leave." Approximately 30 minutes of discussion ensued, during which Blankenship explained that he "was merely trying to vindicate his right to be there and get some kind of due process from the Board." Blankenship ultimately elected to leave "rather than be arrested."

Blankenship initially filed suit in state court, but nonsuited the action to pursue relief in federal court. In his federal complaint, Blankenship named as

3

No. 15-50974

defendants, in their individual capacities, Charles Buenger, Barry Hand, and CBWSC Board members—Steve Mauk, Clay McKinney, Ben Saage, David Hendrick, Bobby Bain, Danny Volcik, Eddie Coker, Leslie Casey, and J. "Andy" Hawkins (collectively, CBWSC Defendants); Blankenship also named Parnell McNamara (Sheriff McNamara), Sheriff of McLennan County, Texas. Blankenship asserted three claims for damages against the CBWSC Defendants pursuant to 42 U.S.C. § 1983: (1) the CBWSC Defendants deprived him of constitutionally protected property and liberty interests without due process of law in violation of the Fifth and Fourteenth Amendments; (2) the CBWSC Defendants violated Blankenship's First Amendment rights by "censor[ing]" ballot content; and (3) the CBWSC Defendants engaged in a civil conspiracy to deprive him of the aforementioned rights. Blankenship also alleged that Texas's criminal trespass statute, Texas Penal Code § 30.05, is unconstitutional as applied to Blankenship. It is for this final claim that Blankenship named Sheriff McNamara as a defendant; Blankenship avers that Sheriff McNamara is a "necessary party" to challenge the constitutionality of the statute.

The CBWSC Defendants and Sheriff McNamara subsequently moved to dismiss Blankenship's complaint. Adopting the magistrate judge's Report and Recommendation, the district court dismissed the suit in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Blankenship timely appealed.

## II

Though the district court purported to dismiss Blankenship's complaint under Rule 12(b)(6), it unquestionably relied in part on matters of subject matter jurisdiction more properly considered under Rule 12(b)(1). Accordingly, we conduct our review under both applicable standards.

No. 15-50974

We review de novo a district court's dismissal under Rules 12(b)(1) and 12(b)(6).[1] "In reviewing the dismissal order, we take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff."[2]

Under Rule 12(b)(6), our "task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[3] "This analysis is generally confined to a review of the complaint and its proper attachments."[4] Under Rule 12(b)(1), however, "the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"[5]

## III

The district court dismissed Blankenship's § 1983 claims against the CBWSC Defendants, holding that the CBWSC Defendants were not "state actors" and "did not act under the color of state law," and therefore, that Blankenship's claims were not cognizable under § 1983.[6] The Supreme Court has explained that "[s]ection 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law" and "[a]nyone whose conduct is 'fairly attributable to the state' can be

---

[1] *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

[2] *Id.* (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

[3] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[4] *Lane*, 529 F.3d at 557 (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)).

[5] *Id.* (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

[6] *See* 42 U.S.C. § 1983 ("Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." (emphasis added)).

sued as a state actor under § 1983."[7]  "'[M]ere private conduct, no matter how discriminatory or wrongful,' is excluded from § 1983's reach."[8]  The Supreme Court has clarified that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment."[9]

## A

In his complaint, Blankenship offers only one ground for designating the CBWSC Defendants as state actors: they invoked the Texas doctrine of official immunity, available only to public officials,[10] in prior state court pleadings. Blankenship alleges that the pleading constitutes a judicial admission that estops the CBWSC Defendants from taking a contrary position in federal court for purposes of § 1983 liability.

For a number of reasons, Blankenship is mistaken.  Judicial admissions are defined as "factual assertions in pleadings . . . conclusively binding on the party who made them."[11]  A judicial admission "has the effect of withdrawing a *fact* from contention."[12]

---

[7] *Filarsky v. Delia*, 132 S. Ct. 1657, 1666 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

[8] *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (quoting *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003)).

[9] *Lugar*, 457 U.S. at 928 (quoting *United States v. Price*, 383 U.S. 787, 794 n.7 (1966)).

[10] *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422-24 (Tex. 2004).

[11] *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

[12] *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (emphasis added).

No. 15-50974

While the inquiry is "necessarily fact-bound,"[13] whether state action exists is a question of law for the court;[14] it is not a "fact"[15] that can be admitted. In any event, "judicial admissions are not conclusive and binding *in a separate case from the one in which the admissions were made.*"[16] Additionally, "withdrawn . . . pleadings are no longer judicial admissions."[17]

Here, the CBWSC Defendants invoked official immunity in a now extinguished (and effectively withdrawn) pleading, in an entirely separate suit. The cases on which Blankenship relies are inapposite. In each case, a party admitted a *fact* in a *live pleading* submitted in the *case in which the pleading was filed.*[18] Therefore, the CBWSC Defendants' advancement of

---

[13] *Lugar*, 457 U.S. at 939.

[14] *See Cuyler v. Sullivan*, 446 U.S. 335, 342 n.6 (1980) (describing the state action inquiry as a "question of law"); *see also United States v. Stein*, 541 F.3d 130, 148 (2d Cir. 2008) ("[I]t remains a question of law whether the facts as found by the district court establish state action."); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 344 n.7 (4th Cir. 2000) ("[T]he ultimate resolution of whether an actor was a state actor or functioning under color of law is a question of law for the court."); *Jennings v. Patterson*, 488 F.2d 436, 438 (5th Cir. 1974) ("[S]tate action within the meaning of Section 1983 [is] an issue of law which should never have been submitted to the jury.").

[15] *See MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) ("Judicial admissions . . . typically concern only matters of fact."); *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case."). We note that CBWSC's affirmative defense of official immunity in the prior state court suit would likely not even constitute a judicial admission in the prior state suit, itself, under Texas law. *See Dorrough v. Faircloth*, 443 S.W.3d 278, 284 (Tex. App.—San Antonio 2014, no pet.) ("Whether the doctrine of official immunity may extend to a [particular individual] is a question of law which we review de novo."); *H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.—San Antonio 1997, no pet.) ("A party may not judicially admit a question of law.").

[16] *Universal Am. Barge Corp., v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991) (emphasis added); *see also Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968).

[17] 2 MCCORMICK ON EVIDENCE § 257 (Kenneth S. Broun et al. eds., 7th ed. 2013).

[18] *See, e.g., Jones v. Morehead,* 68 U.S. 155, 165 (1835); *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097-99 (10th Cir. 1991); *Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990); *Davis v. A.G. Edwards and Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987); *Hill v. Fed. Trade Comm'n*, 124 F.2d 104, 106 (5th Cir. 1941).

official immunity in the nonsuited, prior state court case does not have binding effect in this separate, federal proceeding.

Nor does the related doctrine of judicial estoppel preclude the CBWSC Defendants from denying that they are state actors for purposes of § 1983. For a party to be estopped from taking a contrary position from that taken in an earlier proceeding, it must be shown that (1) "the position of the party to be estopped is clearly inconsistent with its previous one" and (2) "that party . . . convinced the [prior] court to accept that previous position."[19] Though Blankenship implies that official immunity is inconsistent with a subsequent denial of state action, he offers no evidence that the Texas court relied on the CBWSC Defendants' official immunity defense before Blankenship nonsuited the action. Moreover, we are doubtful that the state law official immunity defense is "clearly inconsistent" with the state action inquiry. For one thing, while Texas law governs and defines the scope of official immunity, "state action" is a federal issue. Nuances in the respective inquiries could render official immunity unavailable, while state action may be present, and vice versa. In sum, judicial estoppel is not appropriate in this case.[20]

**B**

On appeal, Blankenship alternatively urges that § 1983's state action requirement is met because CBWSC and the State of Texas are "so inextricably intertwined" that CBWSC's conduct is fairly attributable to the State.

But Blankenship did not advance his entwinement argument or supporting facts in his complaint. Other than Blankenship's reference to the purported "judicial admission," his complaint merely asserts the bare legal conclusion that the CBWSC Defendants are state actors who acted under color

---

[19] *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

[20] For similar reasons, we reject Blankenship's conclusory arguments respecting bad faith pleading and detrimental reliance.

of state law. Blankenship supplied legal argument for his "state actor" claim for the first time in his opposition to Sheriff McNamara's motion to dismiss, and his arguments there constituted only a portion of those he now argues on appeal.[21]

The CBWSC Defendants urge that, due to these defects, we should not consider Blankenship's entwinement argument, as neither it nor its supporting facts were set forth in Blankenship's complaint. It is well-established that our review of a Rule 12(b)(6) dismissal is limited to the allegations in the pleadings, i.e. "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[22] Nevertheless, because at least some of Blankenship's allegations supporting his entwinement argument were presented to and considered by the district court, we will address the issue.

As Blankenship notes, CBWSC was formed under Chapter 67 of the Texas Water Code and is subject to various regulations thereunder.[23] Chapter 67 details the formation and election procedures for the corporation, and delineates its powers.[24] Water supply corporations like CBWSC must conform

---

[21] In Blankenship's opposition, he noted that various Texas laws define nonprofit water supply corporations as either "political subdivisions" or "governmental bodies," that CBWSC is exempt from ad valorem taxes, and that CBWSC is highly regulated by the State.

[22] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint, including those made on appeal."); *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 289 (5th Cir. 2006) (refusing to review a "new allegation" because "we review only the well-pleaded facts in the complaint"); *see also Estes v. JP Morgan Chase Bank, Nat. Ass'n*, 613 F. App'x 277, 280 (5th Cir. 2015) (per curiam) (holding that "the district court did not err in failing to consider . . . additional factual allegations" provided in an opposition to a motion to dismiss).

[23] TEX. WATER CODE ANN. § 67.001, et seq.

[24] *See id.*

to Chapter 12 of the Texas Water Code,[25] which sets forth "provisions generally applicable to water rights," and Chapter 22 of the Texas Business Organizations Code, which regulates nonprofit corporations.[26]  Blankenship notes that CBWSC is regulated by agencies of the State, namely, the Texas Commission on Environmental Quality and the Texas Public Utilities Commission.  Under Texas law, CBWSC has a monopoly "in the areas [it] serve[s]"[27] and is granted power of eminent domain.[28]  CBWSC is tax exempt under both Texas and federal law.[29]  Additionally, because CBWSC receives financial assistance from the Water Assistance Fund pursuant to Chapter 15 of the Texas Water Code, it is subject to open meetings and records laws.[30] Blankenship notes that Chapter 15 of the Water Code defines a "political subdivision" to include nonprofit water supply corporations[31] and, similarly, the Texas Open Meetings and Records Act defines "governmental body" to include the same.[32]  Blankenship finally contends that CBWSC's provision of water utility service constitutes a "public function" traditionally performed by the State.

Blankenship's "entwinement" argument derives from the Supreme Court's opinion in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*.[33]  There, the Court held that the "nominally private character of the Association [wa]s overborne by the pervasive entwinement of public institutions and public officials in its composition and workings."[34]  The Court

---

[25] *Id.* § 12.001 et. seq.

[26] TEX. BUS. ORGS. CODE ANN. § 22.001 et. seq.

[27] TEX. WATER CODE. ANN. §§ 13.001(b)(1), 13.002(19).

[28] *Id.* § 49.222.

[29] *See* TEX. TAX CODE ANN. §§ 11.30, 171.065; 26 U.S.C. § 501.

[30] TEX. WATER CODE ANN. § 15.006.

[31] *Id.* § 15.001(5).

[32] TEX. GOV'T CODE §§ 551.001(3)(K), 552.003(1)(A)(ix).

[33] 531 U.S. 288 (2001).

[34] *Id.* at 298.

No. 15-50974

found it significant that: (1) the Association there was composed not of natural persons but of largely public schools; (2) the Association was governed by public officials, namely, "principals, assistant principals, and superintendents"; (3) the Association enjoyed funding derived from the member schools' own sources of income; (4) "State Board members [we]re assigned ex officio to serve" on the Association's Board; and (5) "the Association's ministerial employees" were "eligible for membership in the state retirement system."[35]

The symbiotic relationship illustrated in *Brentwood* is not present here. There is no indication that state officers or public officials sit on CBWSC's Board, that CBWSC employees enjoy state benefits, or that CBWSC members are primarily public entities that control and fund the Board. To the extent that CBWSC could service public entities, "mere public buyers of contract services . . . do not convert the service providers into public actors."[36] It is simply not the case, as it was in *Brentwood*, that the state is intertwined with CBWSC from the "bottom up" and the "top down."[37]

It is true, as the aforementioned Texas statutory law illustrates, that CBWSC is highly regulated by the State and is afforded certain benefits, such as tax exemptions and a monopoly in its service area. But the Supreme Court has found an absence of state action in similar circumstances. In *Jackson v. Metropolitan Edison Co.*,[38] the Court concluded that a privately-owned utility

---

[35] *Id.* at 298-300.

[36] *Id.* at 299 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 839-43 (1982)); *see* TEX. WATER CODE ANN. § 67.002 (indicating that water supply corporations can provide services to a "municipality, a private corporation, an individual, or a military camp or base").

[37] *Brentwood*, 531 U.S. at 300.

[38] 419 U.S. 345 (1974).

11

company was not a state actor even though it was "subject to extensive state regulation."[39]  Specifically, the Court stated,

> The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.  Nor does the fact that the regulation is extensive and detailed, as in the case of most public utilities, do so.[40]

While the Court noted that "[i]t may well be that acts of a heavily regulated utility with at least something of a governmentally protected monopoly will more readily be found to be 'state' acts," it found the existence of a monopoly "not determinative" in the case before it.[41]  The Court reiterated the principle that there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[42]  In *Jackson*, as here, there was no relationship between the challenged actions and CBWSC's monopoly status.[43]

We also reject Blankenship's argument that the delegation to state agencies of the power to regulate CBWSC indicates that the agencies "control" CBWSC.  It is true that a nominally private entity may be treated as a state actor "when it is controlled by an 'agency of the state.'"[44]  But in the seminal case cited for that proposition, the private entity, a college, was actually "administered" and "operated" by the "Board of Directors of City Trusts of the City of Philadelphia" because the founder of the college had named the City of

---

[39] *Id.* at 350.

[40] *Id.* (internal citation omitted).

[41] *Id.* at 350-52; *see also Pub. Utils. Comm'n v. Pollack*, 343 U.S. 451, 462 (1952) (expressly disclaiming reliance on a transit authority's congressionally-granted monopoly status).

[42] *Jackson*, 419 U.S. at 351 (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176 (1972)).

[43] *Id.*

[44] *Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001).

No. 15-50974

Philadelphia the trustee of the fund left to "erect[], maint[ain], and operat[e]" the college.[45]

Nor does the fact that the Texas Open Meetings and Records Act and the Texas Water Code define entities like CBWSC as "political subdivision[s]" or "governmental bod[ies]," respectively, supply state action. We agree with the district court that the terms in the definitional sections are applicable only, as they explicitly state, "[i]n this chapter."[46] Moreover, the question of state action is a functional analysis conducted under federal law; how a state defines a particularly entity is not determinative. We are supported in this conclusion by the Supreme Court's affirmance of a similar question raised in *City of Combes v. East Rio Hondo Water Supply Corp.*[47] There, a three-judge district court considered whether a nonprofit water supply corporation, regulated in identical fashion to CBWSC, was a "'political subdivision' of the State of Texas for purposes of the Voting Rights Act."[48] Though the Texas Water Code, as Blankenship highlights here, indeed defines a water supply corporation as a "political subdivision," that label was not determinative for purposes of the Voting Rights Act.[49]

Blankenship fares no better under the "public function" test, which asks whether "the private entity has exercised powers that are traditionally the *exclusive* prerogative of the State."[50] In *Jackson*, the Court held that the provision of electrical utility services was not a traditional function of the state, in part because the state in which the utility conducted business had "rejected

---

[45] *Pennsylvania v. Bd. of Dirs. of City Trusts of Phila.*, 353 U.S. 230, 231 (1957) (per curiam).

[46] *See* TEX. GOV'T CODE ANN. §§ 551.001, 552.003.

[47] 244 F. Supp. 2d 778, 779 (S.D. Tex.), *aff'd*, 539 U.S. 955 (2003).

[48] *Id.* at 780.

[49] *Id.*

[50] *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (emphasis added) (internal quotation marks omitted).

13

the contention that the furnishing of utility services is either a state function or a municipal duty."[51]   Our review of Texas law reveals that private corporations have long enjoyed a share in the water utility industry.[52]   We conclude that the provision of water services does not fall within the "very few activities" exclusively reserved to the State.[53]

In any event, we do not think that the requisite connection, or nexus, "between the State and the challenged action" of CBWSC exists here.[54] Blankenship alleges that the CBWSC Defendants conspired to violate his asserted property and liberty interests—the right to enter CBWSC premises as a purported "member/owner"—and to violate his free speech rights protected by the First Amendment.  These claims do not relate to the State's regulation of CBWSC.  Blankenship is correct that Chapter 67 of the Texas Water Code regulates the election requirements of a nonprofit water supply corporation.  But the mere fact that CBWSC might not have complied with a relevant regulation is not alone sufficient to ascribe "state action" to an otherwise private entity.

Finally, we reject Blankenship's reliance on a "joint activity" theory to establish state action.  Beyond the fact that Blankenship did not present the theory to the district court, he raised the argument for the first time on appeal in his reply brief.  For multiple reasons, then, the argument has been waived.[55]

---

[51] *Jackson*, 419 U.S. at 353.

[52] *See Allen v. Park Place Water, Light & Power Co.*, 266 S.W. 219, 220 (Tex. Civ. App.—Galveston 1924, writ ref'd); *Cole v. Adams*, 49 S.W. 1052, 1052 (Tex. Civ. App. 1898).

[53] *See White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir. 1979).

[54] *Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson*, 419 U.S. at 351); *see also Rundus v. City of Dallas*, 634 F.3d 309, 315 (5th Cir. 2011) (holding that there was no "pervasive entwinement" where the city "had no role in enacting or enforcing [the private entity's] restriction on distribution of literature").

[55] *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived."); *see also Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (per curiam) ("As a general rule, we will not

Even were we to consider it, Blankenship's argument implies that the Sheriff's Department's role in issuing a trespass warning and threatening arrest, both of which Blankenship admits a deputy could do, subjects CBWSC to § 1983 liability. This bootstrap argument goes beyond that envisioned by the "joint activity" test to which Blankenship refers. Neither "private defendants' misuse of a valid state statute" nor "[p]olice reliance in making an arrest on information given by a private party" renders a private party a state actor.[56]

Because Blankenship's complaint fails to allege facts sufficient to show that the CBWSC Defendants were acting under color of state law, the district court properly dismissed Blankenship's § 1983 claims.

## IV

Blankenship also appeals the district court's dismissal of his "as-applied" procedural due process challenge to Texas Penal Code § 30.05. The district court concluded that Blankenship could not meet the injury-in-fact requirement of standing because he had not been prosecuted under § 30.05, and for similar reasons, Blankenship's challenge was not ripe. The court further held that § 30.05 was constitutional as applied to Blankenship.

Section 30.05(a) provides:

> A person commits an offense if the person enters or remains on or in property of another . . . without effective consent and the person: (1) had notice that the entry was forbidden; or (2) received notice to depart but failed to do so.[57]

---

consider a new theory or issue that was 'not properly before the district court.'" (quoting *Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 576 (5th Cir. 2010))); *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008) ("We will not consider arguments . . . that w[ere] not presented to the district court" and "arguments cannot be raised for the first time in a reply brief.").

[56] *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988).

[57] TEX. PENAL CODE ANN. § 30.05(a).

We first clarify the structure and scope of Blankenship's claim. Though Blankenship cites § 30.05 as the object of his "as-applied" challenge, his complaint attacks the due process procedures relevant to the "criminal trespass warning ticket," which he claimed was issued pursuant to § 30.05. He claims that a deputy issued the warning "without hearing any kind of argument on Plaintiff's behalf," that he has no right to appeal the warning, that his only recourse is to convince CBWSC to "rescind the warning," and that CBWSC refuses to grant him a hearing in regards to the trespass warning.[58] Blankenship concludes that the ticket constitutes an indefinite ban from the property, lest he subject himself to arrest under § 30.05. Blankenship ultimately requests that Sheriff McNamara and his Department, as well as the CBWSC Defendants, be enjoined from enforcing the trespass ticket.

But as Blankenship admits in his reply brief, § 30.05 does not contemplate "trespass warning" tickets.[59] We therefore frame Blankenship's as-applied challenge to the statute that he attacks, § 30.05. We read Blankenship's complaint to take issue with the lack of a hearing, prior to an arrest under § 30.05, to ascertain whether Blankenship has rights to the property. Additionally, we note that the only due process with which we are concerned is that due from the Sheriff's Department. To the extent Blankenship contends he should receive some degree of process from CBWSC, his argument is foreclosed by our conclusion that the CBWSC Defendants are not state actors.

---

[58] Blankenship's complaint is unclear as to who issued the trespass warning. At one point, Blankenship states that "sheriff deputies . . . issued him a trespass warning ticket." Elsewhere, he claims that he was "given a trespass warning . . . by the Sheriff."

[59] To the contrary, a review of Texas case law indicates that such warnings are typically issued pursuant to local ordinances or unofficial policy. *See, e.g.*, *Ray v. State*, No.03-14-00538-CR, 2016 WL 1317941, at *2 (Tex. App.—Austin Mar. 30, 2016) (unpublished); *Griffin v. State*, No. 05-07-00480-CR, 2007 WL 4282154, at *2 (Tex. App.—Dallas Dec. 7, 2007, no pet.) (unpublished).

No. 15-50974

At the outset, Sheriff McNamara contends that he is not a proper defendant in this suit and should be dismissed from the case.[60]   Sheriff McNamara avers that Blankenship has not pled a policy sufficient to support municipal liability and, further, that he cannot be liable under a theory of respondeat superior.   The district court rested on these conclusions. Blankenship responds that Sheriff McNamara is a proper defendant because he is a "necessary party" pursuant to Federal Rule of Civil Procedure 19. Blankenship argues that without Sheriff McNamara, his request for injunctive relief cannot be granted.

We note that Blankenship appears to miss the pertinent inquiry, which is whether a jurisdictional basis exists for filing suit against Sheriff McNamara to challenge the constitutionality of § 30.05 as it applies to Blankenship.   He does cite Texas authority, not relevant here, indicating that "a party responsible for enforcing" a law must be named in a suit challenging the law's constitutionality.[61]   This principle appears similar to that of *Ex parte Young*.[62] It is perhaps possible that Sheriff McNamara could be a proper defendant pursuant to *Ex parte Young*, which permits individuals to file suit "against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute."[63]   *Ex parte Young* requires such officers have "some connection with the enforcement of the act" and "threaten[ ] to exercise

---

[60] We note that a lack of proper adversaries can defeat the existence of a justiciable case or controversy.  *See, e.g. Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc) (holding that because "plaintiffs have no case or controversy *with these defendants . . .* we lack Article III jurisdiction"); *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999) (addressing whether the "attorney general's claim that [she is not a proper defendant] renders this pre-enforcement action nonjusticiable").  Accordingly, we can discuss the issue prior to and alongside the other requirements of standing at issue in this case.

[61] *See Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 37 S.W.3d 538, 541 (Tex. App.—El Paso 2001, pet. denied).

[62] 209 U.S. 123, 157 (1908).

[63] *Okpalobi*, 244 F.3d at 411 (citing *Young*, 209 U.S. at 157).

17

that duty."[64] Blankenship has not cited *Ex parte Young*, much less alleged that Sheriff McNamara has the requisite "connection" with the enforcement of § 30.05 or had, himself, threatened to arrest Blankenship.

We ultimately need not resolve this issue because, regardless, Blankenship lacks standing to assert his procedural due process challenge to § 30.05. "To establish standing, a plaintiff must show: (1) it has suffered, or imminently will suffer . . . injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury."[65] "An injury-in-fact constitutes 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'"[66]

The district court concluded that because Blankenship had not been prosecuted for criminal trespass under § 30.05, he failed to satisfy the injury-in-fact requirement for standing. We first note that the precedent relied on by the district court—*Johnson v. City of Dallas*[67]—is inapposite to the case at hand. First, the district court misread the opinion as concluding that the plaintiffs there lacked standing to challenge § 30.05 because they had not been convicted of trespass. That was not our holding. The *Johnson* plaintiffs' challenge to § 30.05 was not before the court in *Johnson*; the plaintiffs had not cross-appealed the district court's conclusion that § 30.05 was constitutionally valid.[68] At issue instead was whether the plaintiffs had standing for their as-applied, Eighth Amendment challenge to a city ordinance prohibiting

---

[64] *Id.* at 414-15 (citing *Young*, 209 U.S. at 155-58).

[65] *Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617 (5th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

[66] *Wendt v. 24 Hour Fitness USA, Inc.*, --- F.3d ----, 2016 WL 1458989, *1 (5th Cir. 2016) (quoting *Lujan*, 504 U.S. at 561).

[67] 61 F.3d 442 (5th Cir. 1995).

[68] *Id.* at 443.

sleeping in public.[69]  We held that the plaintiffs, none of whom had been convicted under the ordinance, lacked standing because the Eighth Amendment was "designed to protect those convicted of crimes."[70]  As Blankenship notes, *Johnson*'s rationale, fairly read, is limited to standing in the Eighth Amendment context.

Though the district court's reliance on *Johnson* was error, Blankenship lacks standing.  Our holding rests primarily on the fact that § 30.05 has not yet been applied to Blankenship.

Blankenship argues against this result and contends that he is entitled to challenge § 30.05 because he has been *threatened* with arrest.  We of course recognize that this court and the Supreme Court have held that "it is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."[71]  In *Steffel v. Thompson*, for example, the Supreme Court held that a petitioner had standing to seek a declaratory judgment in his as-applied, pre-enforcement challenge to the constitutionality of a state criminal trespass statute under the First Amendment when police had threatened him with prosecution if he again attempted to distribute handbills at a shopping center, and petitioner's companion had in fact been arrested for the same activity.[72]  We have similarly held that a person need not "disobey the law and await his prosecution" before challenging the constitutionality of a state criminal statute.[73]

---

[69] *Id.* at 444.

[70] *Id.* at 444-45 (quoting *Ingraham v. Wright,* 430 U.S. 651, 664 (1977)).

[71] *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

[72] *Id.*

[73] *Peyote Way Church of God, Inc. v. Smith*, 742 F.2d 193, 198 (5th Cir. 1984); *see also Houston Chronicle Publ'g Co. v. City of League City*, 488 F.3d 613, 617-19 (5th Cir. 2007) (holding that petitioners had standing to mount facial and as-applied pre-enforcement

No. 15-50974

However *Steffel*, and the various other cases in which threats of prosecution were deemed sufficient, are inapplicable to this case. Most involved either facial challenges or First Amendment claims.[74] We have noted that "[s]tanding requirements in the First Amendment context . . . are relaxed 'because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'"[75]

This showing is difficult to make in this case. We have previously stated that "[t]he contention that a party cannot challenge a statute as-applied unless the statute has been applied to him is generally correct."[76] The Eleventh Circuit has similarly indicated that the contention that a statute is unconstitutional as-applied, even though it has not *yet* been applied to the complaining party, "appears to be an inherent contradiction."[77] While the Eleventh Circuit assumed, but did not decide, that a credible threat of injury may suffice in such a context, it "believe[d] that there are few situations where that type of challenge would prevail" and noted that such a rare situation may exist only if the "plaintiff's complaint . . . include[s] all of the factual allegations necessary to clearly illustrate the context in which the statute will be applied."[78]

---

challenge where petitioners showed "imminent future prosecution if the City is *not* enjoined").

[74] *See, e.g., Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Steffel*, 415 U.S. at 459; *Houston Chronicle*, 488 F.3d at 617-18; *Peyote Way*, 742 F.2d at 196, 198.

[75] *J&B Entm't, Inc. v. City of Jackson, Miss.*, 152 F.3d 362, 366 (5th Cir. 1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)); *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284-85 (6th Cir. 1997).

[76] *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006).

[77] *GeorgiaCarry.Org., Inc. v. Georgia*, 687 F.3d 1244, 1255 n.20 (11th Cir. 2012).

[78] *Id.*

No. 15-50974

Blankenship's as-applied, pre-enforcement claim here does not cross the line from speculative and abstract to concrete and imminent.    Though Blankenship was threatened with arrest, and has received a trespass warning ticket, he has not been arrested, prosecuted, or convicted of a violation of § 30.05.  Blankenship's potential future arrest is an insufficient factual basis upon which to hold that § 30.05 fails to satisfy procedural due process *as applied in this case*.[79]  We cannot know what process, in fact, will be afforded to Blankenship even assuming CBWSC directors or employees request his arrest and he is in fact arrested by the Sheriff's Department and subsequently prosecuted.

It is further questionable whether Blankenship has adequately pled that his arrest pursuant to § 30.05 would invade a "legally protected interest."  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."[80]  Blankenship alleges that he has a property interest and corresponding liberty rights in entering CBWSC property because he is an "owner" by virtue of his "membership" in CBWSC.  This claim is nothing more than a "conclusory allegation[], unwarranted factual inference[ ], or legal conclusion[]" that we are not required to accept as true.[81]  Blankenship points to no "ordinance, official policy, state or local law, contract, or other enforceable agreement" to support his claim of a constitutionally protected property

---

[79] *Cf. Houston Chronicle*, 488 F.3d at 623 (holding that "*future* enforcement *intentions* is an inadequate factual basis to support . . . any as-applied analysis," and while "an as-applied unconstitutionality issue *may* arise in the future . . . if the City enforces [the ordinance] against the newspapers . . . , we can *not* uphold the district court's conclusion that [the ordinance] *has been applied* unconstitutionally").

[80] *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).

[81] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

interest in entering CBWSC property or remaining on CBWSC premises when asked to leave.[82]    Accordingly, Blankenship's complaint fails to set forth sufficient facts indicating that the application of § 30.05 to him would invade a legally protected interest.

To the extent Blankenship actually intended to assert an as-applied, procedural due process challenge to the Sheriff's Department's "practice" of issuing trespass warning tickets, he would have standing.  This is because he has actually received the trespass ticket, which is intended to operate as a type of injunction.[83]  Blankenship only alleged this purported "practice" for the first time on appeal and in his reply brief.  Nevertheless, we read his complaint and arguments before the district court to allege deprivation sufficiently, insofar as he was not provided an opportunity to contest the issuance of the trespass warning or appeal it.

Still, Blankenship's challenge, as applied to his circumstances, would not make out a procedural due process violation.  To assert a procedural due process claim, one must have a protected property or liberty interest.[84] Blankenship's    purported    interest    lies    in    his    asserted ownership-by-virtue-of-membership argument.    As indicated previously, Blankenship's contention that his membership supplies a property right to enter CBWSC property is neither supported by the alleged facts, nor plausible

---

[82] *See, e.g. Gentilello v. Rege*, 627 F.3d 540, 545 (5th Cir. 2010).

[83] *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 (11th Cir. 2011) (holding that homeless plaintiffs' challenge to the constitutionality of city ordinances permitting trespass warnings without any apparent appeal procedures could withstand a motion to dismiss, noting that the warnings "are intended to serve instantly as some kind of restraining injunction").

[84] *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976),

on its face.    The liberty interest to which Blankenship refers—"right to locomotion"—does not apply in these circumstances.[85]

We affirm the district court's dismissal of Blankenship's complaint for a lack of standing and failure to state a claim.

\*        \*        \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[85] *See, e.g., Catron*, 658 F.3d at 1266 (holding that "Plaintiffs have a constitutionally protected liberty interest to be in parks or on other city lands of their choosing that are open to the public generally") (citing *City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality opinion)); *Kent v. Dulles*, 357 U.S. 116, 127 (1958) (recognizing liberty interest in "[f]reedom to travel").