# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 6, 2023

Lyle W. Cayce
Clerk

No. 21-11258

BERMAN DE PAZ GONZALEZ, *individually and as heir and on behalf of* THE ESTATE OF BERMAN DE PAZ-MARTINEZ; EMERITA MARTINEZ-TORRES, *individually and as heir and on behalf of* THE ESTATE OF BERMAN DE PAZ-MARTINEZ,

*Plaintiffs—Appellants*,

*versus*

THERESE M. DUANE; ACCLAIM PHYSICIAN GROUP, INCORPORATED; TARRANT COUNTY HOSPITAL DISTRICT, *doing business as* JPS HEALTH NETWORK,

*Defendants—Appellees*,

CONSOLIDATED WITH

No. 22-11019

BERMAN DE PAZ GONZALEZ, *individually and as heir and on behalf of* THE ESTATE OF BERMAN DE PAZ-MARTINEZ; EMERITA MARTINEZ-TORRES, *individually and as heir and on behalf of* THE ESTATE OF BERMAN DE PAZ-MARTINEZ,

*Plaintiffs—Appellants*,

*versus*

THERESE M. DUANE, *Medical Doctor*,

*Defendant—Appellee.*

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-72

---

Before HAYNES and ENGELHARDT, *Circuit Judges*, and SALDAÑA, *District Judge*.[*]

PER CURIAM:[†]

Berman De Paz-Martinez, Jr., a twenty-one-year-old, was severely injured after he jumped out of a moving vehicle. He was hospitalized, and later died after Dr. Theresa Duane disconnected him from a ventilator, allegedly without his parents' consent. Berman De Paz Gonzalez, Sr. and Emerita Martinez-Torres ("Plaintiffs"), claim Dr. Duane's actions violated their and their son's procedural due process rights under the Fourteenth Amendment and the Texas Advance Directives Act ("TADA"). They filed a wrongful death and survival action under 42 U.S.C. § 1983 against Dr. Duane, Acclaim Physician Group, Inc. ("Acclaim"), and JPS Health Network ("JPS") (collectively, "Defendants"). The district court dismissed Plaintiffs' claims against JPS and Acclaim in full, and against Dr. Duane, in part. After discovery, the district court granted Dr. Duane's summary judgment motion. Plaintiffs timely appealed both judgments in two separate appeals, now consolidated. For the reasons set forth below, we AFFIRM.

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[†] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 21-11258
c/w No. 22-11019

## I.    Background

### A. Facts

On March 29, 2018, De Paz-Martinez, Jr. was taken to the JPS Emergency Department after he sustained serious injuries by jumping from a moving vehicle that was traveling at approximately 45 miles per hour.  On arrival, De Paz-Martinez, Jr. was in a coma and required intubation. JPS staff told Plaintiffs that their son's prognosis was extremely poor, and he likely would not survive.

Two days later, Plaintiffs met with a nurse practitioner for a physician and pastoral care conference.  During this conversation, Plaintiffs indicated that they wished to continue treatment.  Early the next morning, Dr. Duane—a Medical Director for JPS and a member of Acclaim's board of directors—told Mr. De Paz Gonzalez that his son would be disconnected from the ventilator.  Shortly after De Paz-Martinez, Jr. was taken off the ventilator, he died.

Later that year, a political advocacy group called Direct Action Texas published an article claiming that a medical director at JPS had been terminating life-sustaining treatment for patients, in violation of the TADA. An anonymous JPS surgical resident subsequently verified the article's allegations, indicating that on three different occasions, Dr. Duane had improperly withdrawn medical treatment without familial consent.  This, along with allegations of other questionable conduct by Dr. Duane, caused ICU nurses to make a report to JPS's CEO.  After an investigation, Dr. Duane agreed to dismissal from her position in lieu of JPS filing a formal complaint against her with the Texas Medical Board.

No. 21-11258
c/w No. 22-11019

### B.  Procedural History

Plaintiffs sued under § 1983 asserting, among other claims, that Defendants violated their Fourteenth Amendment procedural due process rights when Defendants allegedly failed to comply with the TADA. *See* TEX. HEALTH & SAFETY CODE §§ 166.001–.053.  Plaintiffs brought their claims individually, as heirs, and on behalf of their son's estate.  Shortly thereafter, Plaintiffs voluntarily dismissed, and the district court entered final judgment on, the claims on behalf of their son's estate.  Defendants then moved to dismiss the remaining claims, which the district court granted.  We vacated the judgment on appeal and remanded, concluding Plaintiffs had standing to assert a wrongful death and survival action under § 1983.  *De Paz v. Duane*, 858 F. App'x 734, 738 (5th Cir. 2021) (mem.).

On remand, Plaintiffs reasserted their § 1983 claims, individually and as heirs.  Specifically, Plaintiffs claimed that Defendants violated their constitutional rights by depriving: (1) their son of his life and liberty interests inherent in the United States Constitution; (2) their son of his life, liberty, and property interests created by the TADA; and (3) them of their own liberty and property interests created by the TADA.

Defendants renewed their motions to dismiss, which the district court granted in part.  It dismissed all § 1983 claims against JPS and Acclaim on the ground that Plaintiffs failed to plausibly plead municipal liability and entered a final judgment as to them under Rule 54(b).  It also dismissed Plaintiffs' § 1983 claim against Dr. Duane that was based on the alleged deprivation of their and their son's due process rights created by the TADA.  Plaintiffs timely appealed this partial, final judgment under Case No. 21-11258.

Thereafter, discovery proceeded as to the sole surviving claim— whether Dr. Duane violated § 1983 by depriving Plaintiffs of their Fourteenth Amendment due process rights that are inherent in the Constitution.  Dr.

4

No. 21-11258
c/w No. 22-11019

Duane moved for summary judgment, which the district court granted. The district court reasoned that Plaintiffs could not recover damages because De Paz-Martinez, Jr.'s preexisting injuries were the proximate cause of his death, not Dr. Duane's conduct. Plaintiffs timely appealed under Case No. 22-11019. The two appeals were initially consolidated only for oral argument purposes, but we hereby consolidate them in full.[1]

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction under 28 U.S.C. § 1331. We in turn have appellate jurisdiction under 28 U.S.C. § 1291 because the district court's order granting Dr. Duane's motion for summary judgment was a final judgment. Likewise, because the prior "prejudicial adverse interlocutory rulings" merged with the final judgment, we have jurisdiction over the district court's orders granting JPS's and Acclaim's motions to dismiss in full and Dr. Duane's motions to dismiss in part. *Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1102 (5th Cir. 1983).

We review a district court's dismissal of a complaint under Rule 12(b)(6) de novo. *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005). To determine whether a plaintiff has stated a plausible claim for relief, "the well-pleaded facts alleged in [the] complaint are accepted as true and the allegations are construed in the light most favorable to" the plaintiff. *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] Accordingly, the issue in Case No. 21-11258 as to whether Dr. Duane's partial summary judgment was appealable in that case is now moot. As discussed below, given the consolidation, all the relevant rulings are before us.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Likewise, we review a district court's order granting summary judgment de novo, applying the same standard as the district court. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155–56 (5th Cir. 2018) (quotation omitted). "Summary judgment is proper only when it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 156 (quotation omitted). We view the facts in the light most favorable to the non-movant and draw all inferences in his favor. *Id.* (quotation omitted).

## III.    Discussion

Plaintiffs contend the district court erred when it granted JPS's and Acclaim's motions to dismiss in full and Dr. Duane's motion to dismiss in part. Likewise, Plaintiffs also contend the district court erred in granting Dr. Duane's motion for summary judgment. We examine each challenge in turn, but none warrant reversal.[2]

---

[2] In addition to those discussed in this opinion, Plaintiffs raise several other challenges to the district court's orders granting Defendants' motions to dismiss and motions for summary judgment—including, whether they have procedural due process rights under the Fourteenth Amendment for end-of-life decisions, whether Dr. Duane is entitled to qualified immunity, whether Dr. Duane's removal of the ventilator implicates Plaintiffs' liberty interest in end-of-life decisions, etc. We need not reach these issues, however, because we are affirming on the grounds stated above. Thus, we express no judgment on the merits of the district court's conclusions regarding these issues other than to note in *De Paz v. Duane*, 858 F. App'x 734 (5th Cir. 2021) (mem.), we addressed Plaintiffs' standing to sue under § 1983, not whether they had a procedural due process right to end-of-life decisions inherent in the United States Constitution. *Id.* at 736 n.9, 738.

No. 21-11258
c/w No. 22-11019

### A.     Motion to Dismiss

In their appeal of the motion to dismiss, Plaintiffs urge that they have plausibly pled municipal liability against JPS and Acclaim, and that the TADA creates a life, liberty, or property interest for them and their son. We disagree.

### 1. Municipal Liability

To establish municipal liability under § 1983, Plaintiffs "must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks and citation omitted). Plaintiffs falter on the first requirement.[3]

Plaintiffs' first theory is that Dr. Duane was delegated policymaking authority by virtue of her positions as "Vice Chair," "Department Chair," and "Medical Director" of JPS and because she allegedly "overs[aw] and assume[d] responsibility for her department." But this is not enough by itself for us to infer that Dr. Duane has been delegated final policymaking authority, especially when for JPS, the medical executive committee sets the policy for medical decisions, and for Acclaim, its board of directors sets the policies. *See* Tex. Health & Safety Code § 281.0286(e), (f)(1)(F); Tex. Bus. Orgs. Code §§ 22.201, 22.202. Thus, the most we can infer

---

[3] Plaintiffs also request that we adopt Texas's "vice principal" doctrine as a proxy for the "policymaker" standard when the defendant is a private corporation, like Acclaim, instead of a municipal corporation. We respectfully decline Plaintiffs' request as it completely misapplies the "vice principal" doctrine. *See, e.g., Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727–28 (4th Cir. 1999); *see also Kennemer v. Parker Cnty.*, No. 21-10467, 2022 WL 2610239, at *1 n.1 (5th Cir. July 8, 2022) (per curiam); *Kimble v. Correcthealth Jefferson, L.L.C.*, No. 22-30388, 2023 WL 3946437, at *1 (5th Cir. June 12, 2023) (per curiam); *Olivas v. Corr. Corp. of Am.*, 215 F. App'x 332, 333 (5th Cir. 2007) (per curiam).

is that Dr. Duane has been delegated decision-making authority, which is not enough. *Sweetin v. City of Tex. City*, 48 F.4th 387, 393 (5th Cir. 2022).

Plaintiffs' second theory is that their allegations create an inference that Acclaim and JPS had a policy of granting physicians discretion to make unilateral end-of-life decisions. To support their second theory, Plaintiffs contend JPS's and Acclaim's arguments before the district court and in the first appeal that the TADA is optional constitute judicial admissions. Not so. Judicial admissions are inapplicable to questions of law. *See Blankenship v. Buenger*, 653 F. App'x 330, 335 & n.15 (5th Cir. 2016) (per curiam).

What Plaintiffs are left to argue then is that the anonymous email and article from the advocacy group demonstrates a widespread practice or custom. This too fails. They, at most, allege isolated incidents by a single doctor within a one-month period. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984); *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that for § 1983 liability, a practice must be "so persistent and widespread as to practically have the force of law").

Nor can we reasonably infer that Dr. Duane acted pursuant to an official policy when Plaintiffs' other allegations—that other personnel reported Dr. Duane's conduct to JPS's CEO, resulting in her dismissal—are inconsistent with this inference. Without more—such as allegations that other doctors engaged in the same type of conduct—Plaintiffs fail to plausibly plead facts suggesting an official municipal policy. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (holding "[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy").

Plaintiffs' last theory is the converse of the second—Acclaim and JPS were deliberately indifferent to the need for a policy prohibiting unilateral termination decisions either by failing to adopt a policy or by failing to train

their personnel. This theory fails for being too conclusory. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (explaining "[t]he description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts"). Accordingly, we affirm the district court's dismissal of Acclaim and JPS.

### 2. Texas Advance Directives Act

Plaintiffs contend that the TADA creates a life, liberty, or property interest for their son to receive life-sustaining treatment and for them to make medical decisions on his behalf. We disagree.

State-created substantive interests arise when a state places "'substantive limitations on official discretion.'" *See Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). A state law substantively limits official discretion when it establishes "substantive predicates to govern official decision-making" and also "mandate[es] the outcome to be reached" when the substantive predicates are met. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (internal quotation marks and citation omitted). The state law must also use "explicitly mandatory language" and require a particular substantive outcome. *Id.* at 463.

Under the TADA, when a terminally ill patient has not executed an advanced directive and is incapable of communicating, the attending physician and the patient's parents "may make a treatment decision that may include a decision to withhold or withdraw life-sustaining treatment." *See* Tex. Health & Safety Code § 166.039(a), (b). If the parents make a decision regarding life-sustaining treatment and the treating physician refuses to comply with the treatment decision, the physician must follow the procedure set forth in § 166.046 in order to remain within the aegis of the

TADA. *See id.* § 166.045(d). Under § 166.046, the physician's refusal to honor the treatment decision made by the patient's parents is "reviewed by an ethics or medical committee," and the patient must be "given life-sustaining treatment during th[is] review." *Id.* § 166.046(a-1). Importantly, the procedures set forth in § 166.046 do not mandate a particular substantive outcome—that is, the committee is free to affirm or reverse the physician's decision. *See id.* § 166.046.

Based on these provisions, we conclude the TADA does not create a substantive interest for Plaintiffs or their son. While the TADA may contain substantive predicates—like a parent's decision regarding life sustaining treatment and a doctor's refusal to comply with that decision—no particular substantive outcome is guaranteed.[4] Rather, the TADA guarantees only that a review of the physician's decision by an ethics or medical committee will take place, and the committee has largely unfettered discretion to either affirm or reverse the physician's decision. *See id.*; *see also T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9, 80, 85 (Tex. App.—Fort Worth 2020, pet. denied) (explaining "[§] 166.046 makes no provision whatsoever for *how* the committee will review or otherwise consider the attending physician's decision" and that "[b]y giving the deciding 'vote' to [the] committee, . . . [§] 166.046(e) unquestionably trumps the . . . surrogate decision maker's decision"). Thus, at most, Plaintiffs and their son have an

---

[4] To be clear, when the process under § 166.046 is invoked, there is an entitlement to life-sustaining treatment for a limited period of time. *See* Tex. Health & Safety Code § 166.046(a-1). However, this limited, mandatory right does not dictate that a particular *outcome follow from the procedures at issue*, but "rather[] . . . simply sets the rules [for life-sustaining treatment] pending that outcome." *Cf. Elwell v. Byers*, 699 F.3d 1208, 1215 (10th Cir. 2012) (concluding a foster-care statute did not create a liberty interest despite it requiring a temporary substantive result—that a child could not be removed from a foster home upon request of a hearing—because the statute did not mandate any particular outcome from the hearing and procedures).

expectation in receiving a certain process, which is not, by itself, enough. *See Olim*, 461 U.S. at 250 n.12 ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."). Accordingly, we affirm the district court's dismissal of Plaintiffs' claims against Dr. Duane based on the TADA.

## B. Motion for Summary Judgment

Plaintiffs contend the district court erred when it (1) concluded there was no genuine dispute of material fact regarding § 1983 causation, and (2) rejected application of the "loss of chance" doctrine. Neither argument has merit.[5]

"[A] plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Slade v. City of Marshall*, 814 F.3d 263, 264 (5th Cir. 2016) (quotation omitted). Under Texas's Wrongful Death Act, "liability may be predicated only on an injury that causes an individual's death." *Id.* (quotation omitted). It is not sufficient to show that the defendant's wrongful actions "reduced the decedent's chance of survival by some lesser degree." *Id.* at 265.

---

[5] Recall that Plaintiffs voluntarily dismissed their claims brought on behalf of De Paz-Martinez, Jr.'s estate under Texas's survival statute. *See* TEX. CIV. PRAC. & REM. CODE § 71.021. Claims under the survival statute are effectively derivative claims. *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 330 (5th Cir. 1994) (per curiam). Thus, when Plaintiffs voluntarily dismissed these claims, their son's rights were no longer in play. In fact, Plaintiffs do not even contest the district court's conclusion to that effect. Naturally then, our holding regarding causation only applies to Plaintiffs' wrongful death action asserted under § 1983.

No. 21-11258
c/w No. 22-11019

Plaintiffs argue there is a genuine dispute of material fact regarding the "causal link" between the alleged deprivation of due process and their son's death because after Dr. Duane removed their son's ventilator (and did not reintubate him), he died. However, Plaintiffs fail to create a fact issue by providing evidence rebutting Dr. Duane's medical evidence which establishes that the actual cause of their son's death was his underlying injuries, not Dr. Duane's removal of the ventilator. Put differently, Plaintiffs have not offered any competent evidence which demonstrates that "[D]efendant's wrongful actions more likely than not caused [De Paz-Martinez, Jr.'s] death—not just that they reduced [his] chance of survival by some lesser degree." *See id.* at 264–65. Indeed, Plaintiffs' separate lawsuit against the driver of the moving vehicle, in which they claimed that the driver's conduct caused their son's death, directly contradicts their argument that this is not a "loss of chance" case. As such, we conclude there is no genuine dispute of material fact regarding causation.

Plaintiffs' second argument is similarly foreclosed by *Slade. See id.* at 267. Plaintiffs argue it is inconsistent with policies underlying § 1983 to reject application of the "loss of chance" doctrine because most victims who have had life-support withdrawn without consent are terminally ill, and therefore, if the "loss of chance" doctrine did not apply, these victims could never recover. We rejected this argument in *Slade. See id.* (noting "[t]he fact that employing the Texas rule . . . denies compensation to appellants does not suffice to render the borrowing impermissibly inconsistent with federal law" (alteration in original) (quotation omitted)). As such, in the context of this case, rejection of the "loss of chance" doctrine is not inconsistent with the policies underlying § 1983. Accordingly, we affirm the district court's grant of summary judgment in favor of Dr. Duane.

No. 21-11258
c/w No. 22-11019

## IV.    Conclusion

For the reasons set forth above, we AFFIRM the district court's orders granting JPS's and Acclaim's motions to dismiss, partially granting Dr. Duane's motion to dismiss, and granting Dr. Duane's motion for summary judgment.